## SUFFOLK COUNTY.

### Abby T. Prescott *vs.* Richard Ward.

If an administrator has in his possession a note due from his intestate and refuses to pay it or deliver it to the owner, an action at law may be maintained upon it, to recover the amount from the assets of the estate of the intestate.

Delay by a man to fulfil a promise to marry, and services rendered to him by the woman during the continuance of the engagement, in procuring and taking care of his clothing, are a sufficient consideration for a promissory note given by him to her; and the fact that other motives entered into his mind and induced him to give it is immaterial.

The extent to which the cross-examination of a witness may be carried, in relation to events in his own life, long anterior to the existence of the matters in controversy in the suit, and having no connection therewith, rests within the discretion of the presiding judge.

If the defendant in an action upon a promissory note has possession of the same and refuses to produce it, a witness who is acquainted with the defendant's handwriting may testify that he has seen the note and that the body and signature were in his opinion in the defendant's handwriting.

If an administrator, in an action against him on a promissory note given by his intestate to

a woman, defends on the ground that she was his intestate's mistress, and that the note was given for an illegal consideration, and he, being a witness, testifies on cross-examination that he and his family had received her as a visitor, and that she had been intimate with them, he cannot be allowed to testify further that after her last visit to them he gave notice to his intestate not to bring her there again. Nor can the plaintiff be allowed to introduce in evidence letters written to her, in the absence of the intestate, by a member of his family, for the purpose of showing the character of the intercourse between them.

CONTRACT. The declaration alleged that George C. Ward, the defendant's intestate, made a promissory note, the substance of which was annexed, and that an exact copy could not be annexed because the note was in the defendant's possession; and that the defendant owed the plaintiff the amount thereof and interest. The note described was dated November 14th, 1857, for $10,000, payable to the order of the plaintiff on demand with interest.

The answer denied the making or delivery of the note; and averred that, if such note was made and delivered, it was without consideration, and for an illegal and immoral consideration, and was paid during the life of George C. Ward.

At the trial in this court, before *Chapman*, J., the plaintiff introduced evidence tending to prove that she held such a note as is described in the declaration, and in November 1860 delivered it to the intestate, to be kept for her temporarily, and that it had not been returned to her. The defendant's counsel contended that the plaintiff's remedy was in trover, and not by an action of contract; but the judge instructed the jury that if the plaintiff had proved to their satisfaction that such a note had existed and been put by the plaintiff into the hands of the intestate to be kept by him for a temporary purpose, and if he had not returned it to her, according to the terms on which he received it, this action would lie.

The plaintiff, in proving her case, offered evidence tending to show what was the actual consideration of the note. The evidence tended to show that she and the intestate had been for many years engaged to be married to each other; that she had made many purchases of clothing for him, and taken care of his clothes; that she had procured, at his expense, the materials for a wedding dress, and that it had been made; that the wedding

had been postponed by the sickness and death of her daughter; that it had been again postponed in consequence of the bad conduct of her son, who had occasioned some trouble to the intestate; that the intestate had declared that he would not marry her as long as the son was about; that on another occasion, when she was dangerously sick, he declared that he should have married her long ago if it had not been for his business. The plaintiff's sister, Mrs. Dora Whitney, testified that the intestate told her the note was given to the plaintiff as security in case he should die, so she might be provided for, and in consideration of the engagement being suspended. But the witness further stated that this was her own language and not the language of the intestate. There was also evidence as to the conduct and circumstances of the parties before and after the date of the note. The defendant's counsel contended that, upon this evidence, the note was given in the nature of a *donatio causa mortis*, and that the evidence did not show a sufficient consideration for the note. The jury were instructed that it was for them to find, as a question of fact, what the consideration was; that if it was a *donatio causa mortis*, it was without consideration and was void; but if it was given in consideration of any services performed by the plaintiff, or in consideration that the intestate had unreasonably delayed to perform his promise of marriage, it would be valid.

The plaintiff's said sister, who was one of the principal witnesses in her behalf, stated, on the direct examination, that she was a widow when she married her second husband; and, upon cross-examination, that she was married to her first husband, George Prescott, in 1839, and that he died in 1843 or 1844, and that she was married to her second husband in 1845. The defendant's counsel proposed to her the following question: " Did you not make an attempt to get money from the estate of a Mr. Smith, or his heirs, on the ground that you had been married to him ? " This question was objected to, and the judge excluded it.

The defendant's counsel, in cross-examination of Mrs. Whitney, proposed to exhibit certain papers, which they alleged were

signed by her, and inquire of her, first, whether or not she signed them at their respective dates, and also to inquire of her, after examining those papers, whether she was not mistaken in her evidence as to the time when she was married to Prescott; but the judge, on the objection only of the plaintiff's counsel, refused to permit said papers to be exhibited to her and said questions to be put.

These papers were all dated in 1842, and purported to be signed by Dorothea Prescott: one of them was a release to John H. Smith from any charge of being the putative father of a child, of which she had recently been delivered; and another was a release to said Smith of all causes of action against him, and described the signer of it as a single woman.

The plaintiff introduced Francis A. Prescott as a witness, who testified that he was acquainted with the handwriting of the intestate; that the plaintiff at one time showed him the note declared on, and that he cast the interest upon it for her; and that both the body of the note and in his opinion the signature were in the handwriting of the intestate. The defendant's counsel objected that, the note not being produced, this species of evidence was incompetent; but the objection was overruled.

The defendant contended that the plaintiff and the intestate, who was his brother, were not engaged to be married, but that the intestate kept her as his mistress. He was a witness, and testified to facts which, as his counsel alleged, tended to establish this defence. On cross-examination, the defendant testified that he and his brother came from New Hampshire; that they had a father, mother and sisters residing there; that his father and mother and some of his sisters had visited Boston; and his testimony tended to show that they had been introduced to the plaintiff by the intestate; that she had made purchases of some goods for them, with the knowledge of his brother; and that his brother had taken her to New Hampshire to visit them. He also testified that when he resided in Boston in 1851 one of his children was sick and died; that the plaintiff was very intimate in his family, and assisted his wife in taking care of the child while it was sick and at its death; and that for a year or more,

about that time, she was very intimate in his family. He also stated that his brother brought her to his house at Malden to visit his family about seven or eight years before his death. He also identified several letters, which he testified were in the hand-writing of his sister, Mrs. Smith.

After the cross-examination, his counsel offered to prove by aim that after the intestate brought the plaintiff to visit his family the last time, he gave the intestate notice not to bring her there again. This was objected to and was excluded.

In reply to the defendant's evidence, the plaintiff offered the letters of Mrs. Smith to the plaintiff, which had been proved by the defendant. They were objected to, but were permitted to be read. The judge ruled that they were admissible, not as independent statements of Mrs. Smith, but to show the character of the intercourse that subsisted between her and the plain-tiff; that they were to be taken in connection with the evidence, which tended to show that the intestate had introduced the plaintiff to his parents and sisters, and knew the intercourse between them ; and that if from all the evidence they believed that the intestate had introduced the plaintiff to any of these relatives as the person to whom he was betrothed, and permitted them to treat her as such, this would be evidence tending to show that an engagement of marriage actually subsisted.

The jury found a verdict for the plaintiff, and the defendant alleged exceptions.

*E. D. Sohier & C. A. Welch,* for the defendant. An action of contract against the defendant is not the proper remedy of the plaintiff. The note itself is alleged to be in the defendant's hands, and as administrator he is only liable for its detention. The evidence of Mrs. Whitney shows that the note was a *donatio causa mortis.* It was given to the plaintiff to provide for her, in case he died, as a security. It was to be available only in case of his death, and therefore is invalid. The inquiries to Mrs. Whitney on cross-examination were competent. She did not object to answer them. The papers exhibited to her had a direct tendency to contradict her testimony that she had been married to her first husband in 1839, and also to affect her

standing   The opinion of a witness as to the handwriting of a document not produced is incompetent.   The defendant should have been allowed to explain his relations to the plaintiff, by testifying that he gave notice that she should not be brought to his house again.   The letters of Mrs. Smith were inadmissible. The intestate had no knowledge of them.   *Tilk* v. *Parsons*, 2 C. & P. 201.   *Walkup* v. *Pratt*, 5 Har. & Johns. 51, 57.

*T. Willey & F. W. Hurd*, for the plaintiff.   An action in this form is the proper remedy.   *Tower* v. *Appleton Bank*, 3 Allen, 387.   *Almy* v. *Reed*, 10 Cush. 421.   *Fales* v. *Russell*, 16 Pick. 315.   The evidence as to handwriting was competent.   *Almy* v. *Reed*, 10 Cush. 421.   The letters of Mrs. Smith were also competent.   *Thurston* v. *Cavenor*, 8 Iowa, 161.   *Ray* v. *Smith*, 9 Gray, 141.   *Wightman* v. *Coates*, 15 Mass. 1.

BIGELOW, C. J.   1. The objection to the form of the action is not tenable.   The note declared on, according to the theory on which the plaintiff's case proceeded at the trial, has not been paid, taken up, cancelled or destroyed.   It was in the hands of the intestate at the time of his decease for safe keeping, and in trust for the plaintiff.   On his death it went into the hands of the defendant in his capacity as an administrator, to be held in the same manner and for a like purpose.   It is a valid, subsisting debt against the estate of the intestate.   To say that the remedy of the plaintiff is only by an action in the nature of trover against the defendant for his tortious act in refusing to surrender the note to the plaintiff on due demand would be to compel her to seek redress by an action against him in his individual capacity for a conversion of the note, instead of allowing her rightful claim against the estate of the intestate in his hands for the amount of the note.   Doubtless he may be individually liable for such conversion, but his wrongful act in retaining and withholding the note cannot take away her right to receive the debt from the assets of the deceased.   If the intestate in his lifetime had refused to surrender the note to the plaintiff, it is clear that an action of assumpsit to recover the amount could have been maintained.   *Smith* v. *M'Clure*, 5 East, 477.   Or the same principle, if an administrator wrongfully

withholds a note due from his intestate an action will lie on the note to recover the amount in the form of a judgment against the assets of the deceased. The note is still a valid claim against the estate. It cannot be proved by the best evidence, for the reason that the administrator refuses to give it up or to produce it. Such refusal renders secondary evidence of the contents of the note competent and sufficient to warrant a recovery for the amount. The absence of the note affects only the nature of the evidence necessary to support the action; not the form of remedy.

2. A sufficient consideration for the note was clearly proved, and found by the jury under the instructions given by the court. Of the value of the services rendered by the plaintiff to the intestate, or of the loss and injury which she had sustained in her feelings and worldly situation and prospects by the delay of the deceased to fulfil his promise of marriage, no evidence was offered. These certainly constituted a valuable consideration for the note, and, there being no evidence of their inadequacy or insufficiency, the presumption arising from the fact that the note was expressed to be for value received is to have full effect, and well supports the verdict. The fact that other motives entered into the mind of the intestate and induced him to give th note, in addition to those which constituted a valuable consideration, has no tendency to show that the latter did not exist, or that they were insufficient to support the promise. The finding of the jury negatives the theory that the note was intended as a *donatio causa mortis.*

3. The inquiries put to the plaintiff's witness on cross-examination concerning the date of her marriage, and the exhibition of certain papers to her in connection with such inquiries, were rightly excluded by the court. They related to matters entirely collateral and immaterial to the issue between the parties. So far as they had any tendency to contradict the witness or disparage her character, it was within the discretion of the presiding judge either to allow or reject them. On all matters not relevant to the issue, the extent of cross-examination is to be regu lated by the judicia discretion of the judge at the trial.

4. The testimony of the witness to the fact that the note de-clared on was in the handwriting of the defendant and bore his signature was clearly competent. Indeed it was the only evidence on this point which was within the reach of the plaintiff, or of which this part of the case was susceptible. The non-production of the note rendered the best evidence unattainable, and a resort to evidence of a secondary nature was necessary and proper. To hold otherwise would enable a party, by wrongfully withholding a note, effectually to prevent any proof of its existence from being offered in a court of justice.

5. Evidence that the defendant gave notice to the intestate not to bring the plaintiff to his house was inadmissible. It had no tendency to disprove the facts on which the plaintiff relied, but was a separate and independent occurrence at which the plaintiff was not present, and of which she had no knowledge.

6. But for a similar reason the letters of Mrs. Smith, which were offered by the plaintiff and admitted in evidence, should have been excluded. The gist of the inquiry before the jury was, whether the intestate at the time the note in suit was given or previously had made a promise to the plaintiff to marry her, which he had failed to fulfil, and the performance of which was suspended at his instance and request. The letters offered in evidence might have been competent, as bearing on the subject of inquiry, if it had appeared that they were written at or about the time the note was given, and if it had also been shown that they were known to the intestate. Accompanied by such evidence, the letters might have had some tendency to prove the nature of the relation which subsisted between the plaintiff and the intestate, and that the note was given in whole or in part for the consideration alleged by the plaintiff. But in the absence of any such evidence, they were clearly irrelevant. The intestate could not be affected, or the state of his feelings and intentions towards the plaintiff be shown, by proving facts, of the existence of which it did not appear that he had any knowledge As we have no means of knowing how far the contents of those letters may have affected the minds of the jury, we are con strained to send the case to a new trial. *Exceptions sustained.*